UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
TINA SINISCALCO, as Executrix of the Estate of          Civil Action No.
MARY JULIA ABRAHAM, Deceased,

                Plaintiff,          **JOINT NOTICE OF REMOVAL**

   -against-

COLGAN AIR, INC.,
PINNACLE AIRLINES CORP.,
CONTINENTAL AIRLINES, INC., and
FLIGHTSAFETY, INC.
a/k/a FLIGHTSAFETY INTERNATIONAL, INC.,

                Defendants.

-------------------------------------------------------------- X

Defendants Colgan Air, Inc. ("Colgan") and Pinnacle Airlines Corp. ("Pinnacle") by and

through their attorneys, Condon & Forsyth LLP and Goldberg Segalla LLP, and FlightSafety

International, Inc. ("FlightSafety International") by its attorneys, Smith & Moore PLLC and

Damon & Morey LLP, and Continental Airlines, Inc. ("Continental") by its attorneys, Reed

Smith and Harris Beach LLP hereby jointly remove this action to the United States District

Court, Western District of New York, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446.

The grounds for removal are as follows:

    1.    Plaintiff Tina Siniscalco, Individually and as Executrix of the Estate of Mary Julia

Abraham, deceased, has filed an action against Colgan, Pinnacle, Continental, and FlightSafety

International in the Supreme Court of the State of New York, County of Erie. The action was

filed on or about November 19, 2009. Plaintiff seeks wrongful death and survival damages

stemming from the death of Mary Julia Abraham in the air crash of Continental Connection

Flight 3407, operated by Colgan, near Clarence Center on February 12, 2009 (hereinafter "Flight

3407"). Plaintiff alleges a negligence cause of action against Colgan, Pinnacle, and Continental,

and negligent performance of a contractual duty, third-party beneficiary, and negligence causes of action against FlightSafety International.[1]  A copy of the Summons and Complaint is attached hereto as Exhibit "A."  No other records or proceedings have been filed in the state court.

2.  Defendants Colgan, Pinnacle and FlightSafety International have been served. Defendant Continental has not yet been served in this action.

3.  As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because defendants have satisfied the procedural requirements for removal, and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1332(a).

4.  This Notice of Removal is being filed within 30 days of the first date on which defendants may have received a copy of the Complaint as the action was filed on November 19, 2009, and so removal is timely pursuant to 28 U.S.C. § 1446(b).  All the defendants join in the removal of this action.

**I.  Diversity Jurisdiction Exists Between Plaintiff and Defendants**

5.  For the reasons set forth below, removal of this action is warranted as this Court has original jurisdiction pursuant to 28 U.S.C. § 1332 because it involves "citizens of different States."  As the true parties to this litigation are completely diverse and the amount in controversy for this wrongful death action exceeds $75,000, jurisdiction in this Court is proper.[2]

---

[1]  The Complaint also asserts causes of action for wrongful death and conscious pain and suffering and pre-impact terror against all defendants. *See* Plaintiff's Compl. at ¶¶ 69-74.

[2]  The Supreme Court of the State of New York, County of Erie, is located within the Western District of New York and, therefore, venue is proper in this Court pursuant to 28 U.S.C. § 110 because it is "the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

6.     According to the Complaint, plaintiff is a citizen of the State of New York.  *See* Plaintiff's Compl. at ¶ 1.  Although the Complaint states that the decedent was "of West Seneca, New York," it does not identify her citizenship.[3]

7.     Defendant Colgan is incorporated under the laws of the Commonwealth of Virginia with its principal place of business in Virginia.  *See* Affidavit of Brian Hunt at ¶ 4 attached hereto as Exhibit "B."  Colgan is not a citizen of New York.

8.     Defendant Pinnacle is incorporated under the laws of the State of Delaware with its principal place of business in Tennessee.  *See* Plaintiff's Compl. at ¶ 4.  Pinnacle is not a citizen of New York.

9.     Defendant Continental is incorporated under the laws of the State of Delaware with its principal place of business in Texas.  *Id.* at ¶ 6.  Continental is not a citizen of New York.

10.     Although Defendant FlightSafety International is incorporated under the laws of the State of New York with its principal place of business in Flushing, New York, it is not a proper party to this case.

11.     Furthermore, based upon a review of plaintiff's Complaint and seriousness of the claimed injuries and alleged damages, upon information and belief, plaintiff is claiming far in excess of $75,000, exclusive of attorneys' fees and costs.

## II.     Fraudulent Joinder

12.     Normally, the New York citizenship of FlightSafety International would preclude diversity pursuant to 28 U.S.C. § 1441(b).  However, the presence of FlightSafety International

---

3     Pursuant to 28 U.S.C. § 1332(c)(2), "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent . . ."  Upon information and belief, decedent Mary Julia Abraham was a citizen of New York at the time of her death.

does not defeat diversity because it was fraudulently joined as a defendant in an effort to avoid jurisdiction in this Court and there is no proper cause of action against FlightSafety International.

13.     Under the doctrine of fraudulent joinder, "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d. Cir. 2001) (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998)). To establish "fraudulent joinder," a defendant must demonstrate that plaintiff has committed a fraud in the pleadings or that the plaintiff is unable to state a cause of action against the non-diverse defendant. *See Pampillonia*, 138 F.3d at 461; *see also Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 521-23 (S.D.N.Y. 2003).

14.     Plaintiff alleges five (5) purported causes of action against FlightSafety International, none of which is a proper claim.[4]

15.     Plaintiff's first cause of action against FlightSafety International is for "negligent performance of a contractual duty," alleging that FlightSafety International was negligent "in its contracts with Colgan, Pinnacle and/or Continental." *See* Plaintiff's Compl. at ¶¶ 52-53. FlightSafety International did not train the flight crew of Flight 3407 and, thus, had no contractual obligation relevant to the controversy at issue in this litigation. *See* Affidavits of Brian Hunt at ¶¶ 6-7, Exhibit "B;" Patrick Coulter at ¶¶ 5-6 attached hereto as Exhibit "C;" and Michael King at ¶¶ 5-6 attached hereto as Exhibit "E." Moreover, upon review of plaintiff's allegations, a court would "not recognize a cause of action for negligent performance of a contract." *See Chase Manhattan Bank v. Remington Products, Inc.*, 865 F. Supp. 194, 200

---

4     Plaintiff's fourth and fifth causes of action assert claims for wrongful death and conscious pain and suffering and pre-impact terror. *See* Plaintiff's Complaint at ¶¶ 69-74.

701601v.1

(S.D.N.Y. 1994) (citing *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 192-94 (N.Y. 1987)).

16.     In the second cause of action against FlightSafety International, plaintiff alleges that the decedent "was a direct and intended third party beneficiary of the training and/or other contract(s)" between FlightSafety International and Colgan, Pinnacle and/or Continental.[5] *See* Plaintiff's Compl. at ¶ 58.  Again, FlightSafety International did not contractually provide flight training to Captain Renslow or First Officer Shaw.  *See* Affidavits of Brian Hunt at ¶¶ 6-7, Exhibit "B;" Patrick Coulter at ¶¶ 5-6, Exhibit "C;" and Michael King at ¶¶ 5-6, Exhibit "E." Furthermore, plaintiff's argument that the decedent was a third-party beneficiary to an agreement involving FlightSafety International is plainly without merit.  *See Mendel v. Henry Phipps Plaza West, Inc.*, 844 N.E.2d 748, 751 (N.Y. 2006).

17.     As for plaintiff's third cause of action for negligence, plaintiff alleges FlightSafety International "provided training and instruction to Colgan employee [Rebecca] Shaw, the First Officer on Flight 3407 . . . at [FlightSafety International's] Toronto Learning Center in Toronto, Ontario, Canada." *See* Plaintiff's Compl. at ¶ 63.  The training of First Officer Rebecca Shaw, however, was provided by FlightSafety Canada Ltd. in Toronto, Canada. *See* Affidavits of Patrick Coulter at ¶¶ 5-6, Exhibit "C" and Brian Hunt at ¶ 6, Exhibit "B."

18.     FlightSafety Canada Ltd. is an entirely different and separate corporate entity than defendant FlightSafety International, Inc.  *See* Affidavits of Mario D'Angelo at ¶¶ 3-5 attached hereto as Exhibit "D" and Patrick Coulter at ¶ 7, Exhibit "C."

19.     Furthermore, plaintiff's negligent training cause of action (like her other causes of action) is essentially a claim of educational malpractice—a cause of action rejected by the New

---

[5]     Continental was not a party to any contractual agreements whatsoever with respect to the training of pilots employed by Colgan and/or Pinnacle.

701601v.1

York Court of Appeals. *See Donohue v. Copiague Union Free Sch. Dist.*, 391 N.E.2d 1352 (N.Y. 1979). Therefore, plaintiff's first cause of action against FlightSafety is without merit.

20.     Captain Marvin Renslow, the captain of Flight 3407, received training directly from Colgan employees using FlightSafety International simulators at its facility in St. Louis, Missouri. *See* Affidavits of Brian Hunt at ¶ 7, Exhibit "B" and Michael King at ¶¶ 5-6, Exhibit "E.". Accordingly, plaintiff cannot state a proper cause of action for negligent training against FlightSafety International which did not train Captain Renslow or First Officer Shaw.

21.     Moreover, FlightSafety International was fraudulently joined because any claim related to its training programs or simulators is preempted by federal law.  In this instance, plaintiff's claims are barred due to "conflict preemption." This form of preemption exists when it is impossible for a party to comply with both state and federal law, and when state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress or a government agency. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 884 (2000).  Conflict preemption is applicable in this case because the Federal Aviation Administration ("FAA") has created a comprehensive and pervasive regulatory scheme governing FlightSafety International's flight simulators and school curriculum, and the imposition of state standards would conflict with federal law and would interfere with federal objectives over such training of flight crews.

22.     Essentially, plaintiff's claims seek to attack or modify FlightSafety International's FAA-approved operations, including its training curriculum (even assuming FlightSafety International's curriculums were used, which they were not) and its flight simulators.  This underscores the conflict that exists between the plaintiff's claims, which seek to impose state standards upon FlightSafety International, and the regulations and standards promulgated by the

FAA, which seek to establish a unified, national standard. Accordingly, plaintiff's claims are preempted and FlightSafety International has been fraudulently joined.

**III.    Federal Question Jurisdiction**

23.    Federal question jurisdiction extends to cases in which a federal question appears on the face of the well-pleaded complaint or where otherwise applicable state law has been completely preempted by federal law.   The FAA implicitly preempts state law standards governing aviation safety and flight operations as well as flight crew training and procedures – standards that are central to plaintiff's Complaint.[6] *See Shupert v. Continental Airlines, Inc.,* No. 00 Civ. 2743 (LMM), 2004 WL 784859, at *6 (S.D.N.Y. Apr. 12, 2004) ("The FAA and its corresponding regulations, in prescribing a standard of care for the safety of airline travel, has created an 'overreaching general standard of care.'") (citation omitted); *Curtin v. Port Authority of N.Y.,* 183 F. Supp. 2d 664 (S.D.N.Y. 2002) (denying remand in an action asserting negligence because the "comprehensive regulatory scheme covering evacuation procedures, the manifest purpose of the FAA to ensure safety, and the legislative history all favor finding that the standard of care is a matter of federal, not state, law"); *Abdullah v. American Airlines, Inc.,* 181 F.3d 363, 365 (3d Cir. 1999) (holding that federal law preempts the field of aviation safety).

24.    It also is well-accepted that federal question jurisdiction extends to state law claims as to which plaintiff's right to relief "necessarily depends on the resolution of a substantial question of federal law." *Schaeffer v. Cavallero,* 29 F. Supp. 2d 184, 185 (1998) (citing *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 199-202 (1921)); *see Sullivan v.*

---

6    The Airline Deregulation Act (the "ADA"), Pub. L. No. 95-504, 92 Stat. 1705 (codified as amended in scattered sections of 49 U.S.C.) does not limit the scope of the FAA's implied preemption of the field of aviation safety. *See Curtin v. The Port Authority of N.Y.,* 183 F. Supp. 2d 664, 671 (S.D.N.Y. 2002) ("The passage of the ADA with its express preemption provision is not grounds alone for inferring that Congress intended to change the pre-existing federal scheme of regulating air safety in the original FAA").

701601v.1

*American Airlines*, 424 F.3d 267, 272, n.4 (2d Cir. 2005) (holding that, within Second Circuit, "artful pleading doctrine" supports federal question jurisdiction even when complete preemption does not apply if state law claims assert rights arising only under federal law) (citing *Marcus v. AT & T Corp.*, 138 F.3d 46, 55-56 (2d Cir. 1998)).

25.     Plaintiff's causes of action, to they extent they concern flight crew training and procedures or services allegedly provided by FlightSafety International to Pinnacle, Colgan and/or Continental, would be preempted by the Federal Aviation Act of 1958, the Airline Deregulation Act of 1978, as well as federal regulations including, but not limited to, 14 C.F.R. § 142, which essentially provides national standards for the approval and operation of flight crew training centers.

26.     Accordingly, removal of this action is warranted as this Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

27.     No proceedings have occurred in the state court action.

28.     For the foregoing reasons, this Court has jurisdiction over this matter and this action is removable in accordance with 28 U.S.C. § 1441(a).

- 8 -

WHEREFORE, defendants Colgan, Pinnacle, Continental and FlightSafety International,

having complied with the requirements of 28 U.S.C. §§ 1331, 1332, 1441 and 1446, respectfully

request that this action now pending in the Supreme Court of the State of New York, County of

Erie, be removed to this Court.

Dated: December 8, 2009
       New York, New York

       Respectfully submitted,

By: _s/ Neil A. Goldberg_
    Neil A. Goldberg

*Attorneys for Defendants Colgan Air, Inc.*
*and Pinnacle Airlines Corp.*

**GOLDBERG SEGALLA LLP**
665 Main Street, Suite 400
Buffalo, NY  14203
Tel.:   (716) 566-5475
Fax:    (716) 566-5401
ngoldberg@goldbergsegalla.com

       - and –

By: _s/ David J. Harrington_
    David J. Harrington

*Attorneys for Defendants Colgan Air, Inc.*
*and Pinnacle Airlines Corp.*

**CONDON & FORSYTH LLP**
Times Square Tower
7 Times Square, 18th Floor
New York, NY  10036
Tel.:   (212) 894-6780
Fax:    (212) 370-4453
dharrington@condonlaw.com

By: _s/ Thomas J. Drury_
    Thomas J. Drury

*Attorneys for Defendant FlightSafety*
*International, Inc.*

**DAMON & MOREY LLP**
1000 Cathedral Place
298 Main Street
Buffalo, NY  14202
Tel.:   (716) 856-5500
Fax:    (716) 856-5510
tdrury@damonmorey.com

       - and –

By: _s/ David Denny_
    David Denny

*Attorneys for Defendant FlightSafety*
*International, Inc.*

**SMITH & MOORE PLLC**
3030 Lincoln Plaza
500 North Akard Street
Dallas, TX  75201-6608
Tel.:   (214) 740-4200
Fax:    (214) 740-4242
ddenny@smith-moore.com

701601v.1

By: s/ Terrance P. Flynn
    Terrance P. Flynn

*Attorneys for Defendant Continental Airlines, Inc.*

**HARRIS BEACH LLP**
Larkin at Exchange
726 Exchange Street, Suite 1000
Buffalo, NY 14210
Tel:   (716) 200-5050
Fax:   (716) 200-5201
tflynn@harrisbeach.com

    - and –

By: s/ Oliver Beiersdorf
    Patrick E. Bradley
    Oliver Beiersdorf

*Attorneys for Defendant Continental Airlines, Inc.*

**REED SMITH LLP**
599 Lexington Avenue, 22nd Floor
New York, NY 10022
Tel.:   (212) 521-5400
Fax:   (212) 521-5450
pbradley@reedsmith.com
obeiersdorf@reedsmith.com

554313.2

701601v.1

## Index pursuant to Local Rule 81(a)(3)(A)

1.      Summons and Complaint 11/19/09 (Siniscalco, Erie County Index No. 2009-013225)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of defendants' Notice of Removal in the above-captioned matter was served upon the following on the 8th day of December, 2009, via regular mail, postage prepaid:

Kenneth A. Manning
Phillips Lytle LLP
*Attorneys for Plaintiff*
3400 HSBC Center
Buffalo, New York  14203

David J. Harrington
Condon & Forsyth LLP
*Attorneys for Defendants Colgan and Pinnacle*
Times Square Tower
7 Times Square
New York, New York  10036

David Denny
Smith & Moore PLLC
*Attorneys for Defendant Flightsafety International*
3030 Lincoln Plaza
500 North Akard Street
Dallas, Texas  75201-6608

Thomas J. Drury
Damon & Morey LLP
*Attorneys for Defendant Flightsafety International*
1000 Cathedral Place
298 Main Street
Buffalo, New York  14202

Oliver Beiersdorf
Reed Smith LLP
*Attorneys for Defendant Continental Airlines*
599 Lexington Avenue, 22nd Floor
New York, NY 10022

Terrance P. Flynn
*Attorneys for Defendant Continental Airlines*
Harris Beach LLP
726 Exchange Street, Suite 1000
Buffalo, New York  14210

GOLDBERG SEGALLA LLP

*Neil A. Goldberg /s/*
Neil A. Goldberg
*Attorneys for Defendants*
 *Colgan and Pinnacle*
665 Main Street, Suite 400
Buffalo, New York  14203
ngoldberg@goldbergsegalla.com

# EXHIBIT A



STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

TINA SINISCALCO, as Executrix of the Estate of
MARY JULIA ABRAHAM, Deceased
155 Cambridge Avenue
West Seneca, New York 14224,

        Plaintiff,

    v.

COLGAN AIR, INC.,
10677 Aviation Lane
Manassas, Virginia 20110,

PINNACLE AIRLINES CORP.,
1689 Nonconnah Boulevard
Memphis, Tennessee 38132,

CONTINENTAL AIRLINES, INC.,
1600 Smith Street
Houston, Texas 77002,

FLIGHTSAFETY, INC.
a/k/a FLIGHTSAFETY INTERNATIONAL, INC.,
Marine Air Terminal
LaGuardia Airport
Flushing, New York 11371,

        Defendants.

**SUMMONS**

Index No.: ~~I~~ 2009 013225

FILED
11/19/2009/ 14:11:46
ERIE COUNTY CLERK
RCPT # 808285
I 2009013225

**TO THE ABOVE-NAMED DEFENDANTS:**

        YOU ARE HEREBY SUMMONED to appear in this action and to serve a copy

of your answer upon the attorneys for Plaintiff within twenty days after service of this Summons,

exclusive of the day of service [or within thirty days after service is complete if the Summons is

not personally delivered to you within the State of New York]. In case of your failure to answer

or appear, judgment will be taken against you by default for the relief demanded in the Complaint.

Plaintiff designates Erie County as the place of trial.  The basis of venue is CPLR Sections 503 (a), (b) and (c) in that Erie County is the place of Plaintiff's residence (which is identified above on the face of this Summons) and appointment under the Surrogate's Court Act, Erie County is the situs of the fatal accident that killed Decedent Mary Julia Abraham, and Erie County is the residence of Defendants COLGAN AIR, INC., PINNACLE AIRLINES CORP., and CONTINENTAL AIRLINES, INC., by virtue of their joint and several business as common carriers and as the county where the cause of action arose.

This summons was filed on November 19, 2009 with the Clerk of the Court in which this action is brought and assigned the above index number.

**GIVE THESE PAPERS TO YOUR INSURANCE COMPANY IMMEDIATELY.
FAILURE TO DO SO MAY RESULT IN LOSS OF YOUR INSURANCE COVERAGE.**

DATED:     Buffalo, New York
           November 19, 2009


                         Respectfully submitted,

                         PHILLIPS LYTLE LLP

                         By_____
                              Kenneth A. Manning, Esq.
                              Timothy W. Hoover, Esq.
                         Attorneys for Plaintiff
                         3400 HSBC Center
                         Buffalo, NY 14203-2887
                         Telephone:  (716) 847-8400
                         Facsimile:  (716) 852-6100
                         kmanning@phillipslytle.com
                         thoover@phillipslytle.com

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

TINA SINISCALCO, as Executrix of the Estate of
MARY JULIA ABRAHAM, Deceased,

Plaintiff,

v.

COLGAN AIR, INC.,
PINNACLE AIRLINES, CORP.,
CONTINENTAL AIRLINES, INC., and
FLIGHTSAFETY, INC.
a/k/a FLIGHTSAFETY INTERNATIONAL,
INC.,

Defendants.

**COMPLAINT AND DEMAND FOR
JURY TRIAL**

Index No.: _I 2009  013225_

Plaintiff, TINA SINISCALCO, Executrix of the Estate of MARY JULIA ABRAHAM,

Deceased, by and through her attorneys, Phillips Lytle LLP, for her Complaint against

defendants COLGAN AIR, INC., PINNACLE AIRLINES CORP., CONTINENTAL

AIRLINES, INC., and FLIGHTSAFETY, INC. a/k/a FLIGHTSAFETY INTERNATIONAL,

INC., alleges on information and belief as follows:

### PARTIES AND JURISDICTION

1.     Plaintiff Tina Siniscalco is and at relevant times was a resident citizen of

the State of New York, residing at West Seneca, New York, in the County of Erie, and is the

sister of MARY JULIA ABRAHAM (hereafter "Decedent"), late of West Seneca, New York.

Plaintiff is the personal representative of Decedent's Estate, having been issued Letters

Testamentary in Decedent's Estate by the Surrogate's Court of Erie County on March 30, 2009;

and, as Executrix of Decedent's Estate, Plaintiff brings this action for Decedent's wrongful death

and injury against Defendants COLGAN AIR, INC., PINNACLE AIRLINES CORP.,

FILED
11/19/2009/  14:11:46
ERIE COUNTY CLERK
RCPT # 808285
I 2009013225

CONTINENTAL AIRLINES, INC., and FLIGHTSAFETY, INC. a/k/a FLIGHTSAFETY

INTERNATIONAL, INC., for the benefit of Decedent's Estate and Decedent's beneficiaries.

2.    Defendant COLGAN AIR, INC. (hereafter "COLGAN") is and was at all

times relevant to this Complaint a wholly owned subsidiary of Defendant PINNACLE

AIRLINES CORP. and a corporation duly organized and existing under and by virtue of the laws

of the State of Virginia, having its principal place of business in the State of New York (by virtue

of its hub at LaGuardia Airport, in Flushing, New York, and by way of its nine destinations/cities

served in the State of New York, making the State of New York the state with the most cities

served by COLGAN).

3.    Defendant COLGAN is and has been engaged in the business of air

transportation in the City and State of New York and other States of the Union pursuant to an Air

Carrier Operating Certificate issued to it by the Federal Aviation Administration (hereafter

"FAA") authorizing it to act as a common carrier in "air transportation" and "air commerce" as

defined in Section 40102 of the Transportation Act [49 U.S.C. § 40102 (Subtitle VII Aviation

Programs)].

4.    Defendant PINNACLE AIRLINES CORP. (hereafter "PINNACLE") is

and was at all times relevant to this Complaint the parent company of Defendant COLGAN and a

corporation duly organized and existing under and by virtue of the laws of the State of Delaware,

having its principal place of business in the State of Tennessee.

5.    Defendant PINNACLE is and has been engaged in the business of air

transportation and the carriage of persons and property for hire in the State of New York and

elsewhere in the United States by itself, and by and through its wholly owned subsidiary,

Defendant COLGAN.

6.     Defendant CONTINENTAL AIRLINES, INC. (hereafter "CONTINENTAL") is and was at all times relevant to this Complaint a corporation duly organized and existing under and by virtue of the laws of the State of Delaware, having its principal place of business in the State of Texas.

7.     Defendant CONTINENTAL is and has been directly engaged in the business of air transportation in the State of New York and elsewhere in the United States as the holder of an Air Carrier Operating Certificate issued to it by the FAA and also by and through its connection and marketing alliance-code-share agreement with Defendant COLGAN and/or Defendant PINNACLE.

8.     Defendant FLIGHTSAFETY, INC. a/k/a FLIGHTSAFETY INTERNATIONAL, INC. (hereafter "FSI") is and was at all times relevant to this Complaint a corporation and/or a corporate enterprise duly organized and existing under and by virtue of the laws of the State of New York that is authorized to do business and is doing business in the State of New York, with its headquarters in the State of New York, County of Queens.

9.     Defendant FSI is and was, at all times relevant to this Complaint, the holder of a "Training Center Certificate," "Training Specifications" and/or such other air agency certificates issued by the FAA pursuant to Part 142 of the FAA Regulations [14 C.F.R. § 142.1 et seq.] authorizing Defendant FSI to provide, among other services, initial, transition and recurrent pilot training to and for the benefit of persons, airmen, agencies and air carriers in the Aviation Industry, including Defendants COLGAN and/or PINNACLE.

10.     Venue in this Court is proper under CPLR Sections 503 (a), (b) and (c) in that Erie County is the place of Plaintiff's residence and appointment, the situs of the Decedent's death by the fatal crash that is the subject of this Complaint, and is the residence of Defendants

- 3 -

COLGAN, PINNACLE and CONTINENTAL by virtue of their joint and several business as common carriers and as the county where the cause of action arose.

11.     This action falls within one or more of the exceptions set forth in CPLR Section 1602.

### FACTUAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

12.     The Bombardier Model Dash 8-Q400 civil aircraft bearing Serial No. 4200 and U.S. Registration No. N200WQ made the subject of this Complaint (sometimes referred to hereafter as the "aircraft" or the "airplane") was a high wing 74 passenger Transport Category aircraft powered by two Turboprop Pratt & Whitney 150A Engines and equipped with, inter alia, retractable landing gear and trailing edge flaps, autopilot, stall warning and anti-stall systems, ice-detection, pneumatic de-icing and windshield anti-icing systems.

13.     At all times relevant to this Complaint, the aircraft was operated as a "Continental Connection" flight and identified as "Colgan Flight 3407" (hereafter "Continental Connection Flight 3407") with COLGAN employee Captain Marvin Renslow (hereafter "Renslow" or "Captain Renslow"), age 47, acting within the scope of his employment and assigned duties as pilot in command of the aircraft and with COLGAN employee Rebecca Lynne Shaw (hereafter "Shaw" or "First Officer Shaw"), age 24, acting within the scope of her employment and assigned duties as first officer.

14.     Continental Connection Flight 3407 was marketed and advertised using the CONTINENTAL brand name.

15.     CONTINENTAL and various travel websites identified the Continental Connection Flight 3407 as a CONTINENTAL flight operated by "Colgan Air d/b/a Continental Connection."

16.     At the time of the flight operation made the subject of this Complaint, Captain Renslow had fewer than 150 flight hours in the Bombardier Dash 8-Q400, having accumulated most of his professional flying time in the smaller Saab Model 340 aircraft before transitioning to the Dash 8-Q400 in December 2008.

17.     Air to ground radio transmissions during the course of the subject flight operation were made by First Officer Shaw.

18.     Pursuant to an instrument flight plan filed by or on behalf of defendant COLGAN with the FAA's Air Traffic Service, Civil Aircraft N200WQ departed Newark Liberty International Airport (hereafter "Newark") for Buffalo Niagara International Airport (hereafter "Buffalo" or "Buffalo Airport") as Continental Connection Flight 3407 at approximately 9:18 p.m. E.S.T.[1] on February 12, 2009 with 44 fare paying passengers aboard, including Decedent.

19.     At and for a period of time before its departure from Newark, the current National Weather Service reports and forecast indicated Continental Connection Flight 3407 would or might encounter icing conditions while enroute to and at its destination.

20.     During the course of the flight operation made the subject of this Complaint, Continental Connection Flight 3407 encountered icing conditions in the terminal area of its destination, which conditions were known to its flight crew.

21.     At the time icing conditions were encountered by Continental Connection Flight 3407 and for a period of time after icing conditions were encountered, the autopilot was engaged and the airplane was being controlled by input from the autopilot system which controlled the airplane's heading and altitude but not power settings.

---

[1]     All times referred to in this Complaint are Eastern Standard Time, post meridiem, on February 12, 2009.

22.     At approximately 10:12, while Continental Connection Flight 3407 was enroute to Buffalo at an altitude of 4000 feet, Air Traffic Control (hereafter "ATC") cleared Continental Connection Flight 3407 to descend to and maintain 2300 feet.

23.     At approximately 10:15, ATC advised Continental Connection Flight 3407 it was three nautical miles east of the KLUMP Outer Marker and cleared Continental Connection Flight 3407 for an Instrument Landing Systems (hereafter "ILS") approach to Runway 23 at Buffalo Airport with the instruction to turn left to a heading of 260 degrees and to maintain the flight's last assigned altitude of 2300 feet until the aircraft was established in-bound to Buffalo Airport on the Localizer Course of 233 degrees.

24.     The foregoing ATC clearance and instruction to Continental Connection Flight 3407 were received and acknowledged by First Officer Shaw in a transmission that began at approximately 10:15 and 22 seconds.

25.     At approximately 10:16, ATC instructed Continental Connection Flight 3407 to establish radio contact with Buffalo Tower on the Tower's Local Control frequency; and, in response thereto, there was an unclear transmission by First Officer Shaw that began at approximately 10:16 and 11 seconds and ended with "3407".

26.     Beginning at approximately 10:17, ATC Approach Control and Buffalo Tower attempted without success to establish radio contact with Continental Connection Flight 3407.

27.     At about the time or shortly after the last air to ground transmission was heard from Continental Connection Flight 3407, the airplane's landing gear was extended and flaps lowered in preparation for landing.

28.     Shortly thereafter, at approximately 10:16, as a result of, <u>inter alia</u>, their improper, insufficient and substandard training, Captain Renslow and First Officer Shaw failed to recognize the ice-related aerodynamic condition of Continental Connection Flight 3407 and allowed the aircraft's speed to deteriorate to near stall speed, resulting in activation of the aircraft's anti-stall system and causing the autopilot to disconnect.

29.     At the time of the activation of the anti-stall system, there was a 25 pound pilot-induced full force on the control column which caused the nose of the aircraft to pitch up to a deck angle of 30 degrees or more above the horizontal, further slowing the aircraft and causing the aircraft to enter an aerodynamic stall.

30.     The sudden and extreme nose-up attitude of Continental Connection Flight 3407, caused by the flight crew, resulted in a critical loss of airspeed and lift, causing the aircraft to enter into a full aerodynamic stall with a consequent loss of flight control.

31.     As a direct result of aerodynamic control being lost, Continental Connection Flight 3407 rolled up on its right wing to a near inverted and steep nose down condition from which a recovery was not made before the aircraft impacted the ground, killing all 49 persons aboard the airplane, including Decedent, and an occupant whose home was destroyed by the falling aircraft or wreckage.

32.     Prior to and up to and including February 12, 2009, and at all times relevant to this Complaint, Defendant COLGAN and/or Defendant PINNACLE knowingly engaged in the following decision making and corporate conduct which were substantial factors in causing the crash of Continental Connection Flight 3407, including but not limited to the following:

a.      COLGAN and PINNACLE had and continue to have a custom and practice of hiring pilots who previously failed training rides, check rides, FAA flight certificate approval rides, and/or test rides.

b.      COLGAN and PINNACLE had and continue to have the custom and practice of failing to seek or obtain full access to pilot applicants' training histories, including but not limited to pilot applicants' FAA records relating to prior FAA certificate disapprovals, and therefore consciously avoided complete and full knowledge about their pilot applicants, including Renslow.

c.      COLGAN and PINNACLE had knowledge, prior to February 12, 2009, that their pilots' failure to utilize cockpit resource management, failure to perform required checklists, failure to maintain professional demeanor, failure to follow FAA and corporate rules/regulations including those relating to sterile cockpit, failure to adhere to rules regarding sleeping in crew lounges and illness-related/sick leave-related issues, and/or other failures, contributed to and/or caused previous crashes of their flights, including the crash of PINNACLE Flight 3701 on October 14, 2004, and the crash of COLGAN Flight 9446 on October 26, 2003; nevertheless, COLGAN and PINNACLE failed to take any steps to remedy these persistent and serious rules violations.

d.      COLGAN had and continues to have a sick leave policy that is punitive in design and/or practice for its pilots, discouraged pilots from calling in sick even when not fit to fly, and that punished pilots for calling in sick.

e.      COLGAN made a conscious decision to out-source key training requirements, sessions, and simulator experiences for new hires or for employees upgrading to the Dash 8-Q400 without first ascertaining the adequacy of such training.

f.     Despite the existence of the stick-pusher component of the Dash 8-Q400 anti-stall/stall recovery components, COLGAN never provided any training to its pilots, including Renslow and Shaw, in utilizing the stick pusher, and, upon information and belief, never required FSI, pursuant to its contract with COLGAN, PINNACLE, and/or CONTINENTAL, to provide this training.

g.     COLGAN had and continues to have a custom and practice of hiring pilots, including Renslow, who were trained at Gulfstream Training Academy, Inc. and/or worked at Gulfstream International Airlines (collectively "Gulfstream"), despite knowing of the serious and persistent deficiencies associated with the training protocol at Gulfstream.

33.     Prior to February 12, 2009, while Defendant FSI was acting pursuant to a training agreement and/or other contract(s) entered into between Defendant FSI as contract provider and Defendants COLGAN, PINNACLE and/or CONTINENTAL as contractee(s), Defendant FSI as authorized agent of its contractee(s) undertook responsibility for providing Defendant COLGAN employee, Renslow, with the necessary flight simulator training required by Part 121 of the FAA Regulations [14 C.F.R. § 121.1 et seq.] to qualify Renslow for duty as pilot in command of a Bombardier Dash 8-Q400 aircraft operated in regular air carrier line operations.

34.     More specifically, in November of 2008, Renslow, a COLGAN employee at the time, was trained using FSI's Dash 8-Q400 simulator at St. Louis, Missouri.

35.     Prior to February 12, 2009, and while Defendant FSI was acting pursuant to a training agreement entered into between Defendant FSI as contract provider and Defendants COLGAN, PINNACLE and/or CONTINENTAL as contractee(s), Defendant FSI as authorized agent of its contractee(s) undertook responsibility for providing Defendant COLGAN employee,

Shaw, with the necessary ground and transition flight simulator training required by Part 121 of the FAA Regulations [14 C.F.R. § 121.1 et seq.] to qualify Shaw for duty as first officer.

36.    More specifically, in March of 2008, Shaw participated in and completed the "First Officer Dash 8-Q400 Initial/Transition Course" at FSI's Toronto Learning Center in Toronto, Ontario, Canada.

37.    At all times relevant to this Complaint, up to and including February 12, 2009, Defendant FSI, from its headquarters in Flushing, Queens County, New York, actively marketed its services to the aviation community, airlines, private companies and the general public, proclaiming to the general public that "'The best safety device in any aircraft is a well-trained crew.'®" – making clear that FSI's products and training were offered not just for the benefit of its customers, but for those passengers that its customers flew.

38.    At all times relevant to this Complaint, up to and including February 12, 2009, Defendant FSI advertised on its website that it provided "safety-centered training to flight crews of Bombardier regional jets" and provided training on "Bombardier Dash 8 aircraft", and claimed to have "day-to-day working relationships with the great majority of the aircraft manufacturers, which ensures access to the latest bulletins and best practices advisories." Despite this advertising and these claims, upon information and belief, FSI never provided instruction to Renslow or Shaw regarding or in understanding or in utilizing the stick pusher component of the Bombardier Dash 8-Q400 aircraft.

39.    At all times relevant to this Complaint, up to and including February 12, 2009, upon information and belief, Defendant FSI provided to its customers and utilized in its training Bombardier Dash 8-Q400 simulation and training equipment that was not representative of aircraft performance.

40.     Upon information and belief, at all times relevant to this Complaint, up to and including February 12, 2009, FSI was under tremendous financial pressure, as reflected by the following:

a.      FSI's chairman and founder, A.L. Ueltschi, in an April 3, 2003 memorandum, exhorted employees to "do more to reduce costs and increase revenues" because "[a]t the present time, expenses are too high for the amount of revenues we generate."

b.      FSI, through its chairman and founder, A.L. Ueltschi, and through senior and lower management, upon information and belief, pressured its employees to cut costs, reduce staffing, and increase revenue.

c.      The focus of FSI, according to A.L. Ueltschi, was to "challenge and impress customers, make learning fun, and provide a level of competency not yet achieved" – reflecting a focus by FSI not on properly training pilots but on making the process "fun", while acknowledging FSI's lack of appropriate competency in such training.

d.      Employees were encouraged by the founder of FSI to "consolidate jobs" and "cut overhead", while "instructor time must be better utilized" and FSI "must find creative ways to streamline processes, both human and computerized . . . ."

e.      This corporate culture and purposeful decision-making led to substandard flight and simulator training where key components of the aircraft – including the stick pusher mechanism on the Bombardier Dash 8-Q400 – were not adequately or accurately represented by flight simulation devices, and thus were not adequately explained or taught.

41.     As a direct and proximate result of the foregoing, Plaintiff's decedent, MARY JULIA ABRAHAM, was forced to endure severe mental anguish, fear of impending death and ultimately suffered severe and serious permanent physical injuries, grievous pain,

agony and mental anguish, all prior to Decedent's death, which ultimately caused her death, all with no negligence on the part of the Decedent contributing thereto.

42.     At the time of her untimely death as a paying passenger aboard Colgan Flight 3407, Decedent MARY JULIA ABRAHAM, was in robust good health, was a proud veteran of the United States military, and was gainfully employed at Invacare Corporation. By reason of her death and injury, and as a direct and proximate result of the foregoing, her wrongful death as aforesaid has deprived Plaintiff and Decedent's survivors and beneficiaries of the pecuniary value of Decedent's love, affection, companionship, advice, counsel, nurture and moral guidance and, in addition, Decedent's Estate has sustained monetary damages by reason of Decedent's psychic injury, and pre-crash terror, and conscious pain and suffering before death as well as other damages.

43.     Plaintiff demands a jury trial of all issues.

## FIRST CAUSE OF ACTION AGAINST DEFENDANT COLGAN AIR, INC.
### (NEGLIGENCE)

44.     Plaintiff repeats and realleges each and every allegation contained in Paragraph Nos. 1 through 43 with the same force and effect as if fully set forth at length herein.

45.     The crash of Continental Connection Flight 3407 and the resulting death of Plaintiff's Decedent were proximately caused through no fault of the Decedent by the negligence, careless acts and omissions, wrongful acts and omissions, wanton and willful acts and omissions, recklessness and dereliction of duty of Defendant COLGAN AIR, INC., acting by and through its officers and authorized agents, servants and employees functioning within the scope of their agency and/or employment in the use, ownership, maintenance, operation, scheduling, dispatch release, inspection, management, preflight planning, monitoring and control of the Bombardier Model Dash 8-Q400 civil aircraft operated on February 12, 2009 as

Continental Connection Flight 3407; and in the selection, hiring, retention, training and supervision of pilot and operations personnel.

46.    By reason of the foregoing, Defendant COLGAN is liable to Plaintiff on behalf of Decedent's Estate and the Decedent's survivors and beneficiaries for compensatory damages in a sum that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction and for punitive damages; Plaintiff will seek damages in an amount to be proven and determined at the time of trial.

## SECOND CAUSE OF ACTION AGAINST DEFENDANTS COLGAN, AIR, INC., PINNACLE AIRLINES CORP. AND CONTINENTAL AIRLINES, INC. (NEGLIGENCE)

47.    Plaintiff repeats and realleges each and every allegation contained in Paragraph Nos. 1 to 46 with the same force and effect as if fully set forth at length herein.

48.    By reason of their inter-relationship and the Marketing Alliance-Code-Share Agreement between Defendants COLGAN and CONTINENTAL, the rights and obligations of which were assumed by Defendant PINNACLE when it acquired Defendant COLGAN, said Defendants acted in concert, each as the agent and/or principal of the others, for the purposes of their joint and several use and operation of Civil Aircraft N200WQ on February 12, 2009 as Continental Connection Flight 3407 and their joint and several employment and training of the pilots of Continental Connection Flight 3407.

49.    The crash of Continental Connection Flight 3407 and resulting death of Decedent as aforesaid were proximately caused by the joint and several negligence, careless acts and omissions, wrongful acts and omissions, wanton and willful acts and omissions, recklessness and dereliction of duty of Defendants COLGAN, PINNACLE and CONTINENTAL; and, further, by their failure to take all necessary means to avoid the accident and fatal injuries to

Decedent; accordingly, each of the said Defendants is jointly and severally liable to Plaintiff for the death and injury to Decedent.

50.    By reason of the foregoing, Defendants COLGAN, PINNACLE, and CONTINENTAL are liable to Plaintiff on behalf of Decedent's Estate and the Decedent's survivors and beneficiaries for compensatory damages in a sum that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction and for punitive damages; Plaintiff will seek damages in an amount to be proven and determined at the time of trial.

## THIRD CAUSE OF ACTION AGAINST DEFENDANT FSI
### (NEGELIGENT PERFORMANCE OF A CONTRACTUAL DUTY)

51.    Plaintiff repeats and reiterates each and every allegation contained in Paragraph Nos. 1 through 50 of the Complaint with the same force and effect as if fully set forth herein.

52.    The crash of the Continental Connection Flight 3407 and resulting death of Decedent were proximately caused through no fault of the Decedent by the negligence, careless acts and omissions, wrongful acts and omissions, wanton and willful acts and omissions, recklessness and dereliction of duty of Defendant FSI, acting by and through its officers, agents, servants, and employees, while affirmatively discharging its contractual obligations pursuant to its contract(s) with Defendants COLGAN, PINNACLE and/or CONTINENTAL.

53.    More specifically, in rendering services pursuant to its contract(s) with Defendants COLGAN, PINNACLE and/or CONTINENTAL, Defendant FSI created an unreasonable risk of harm to others, increased a risk of harm to others, created a dangerous condition, and/or exacerbated a dangerous condition.

- 14 -

54.     Upon information and belief, Decedent and other Continental Connection Flight 3407 passengers relied on FSI's performance of its contractual obligations with CONTINENTAL, PINNACLE, and/or COLGAN.

55.     As a result of the foregoing, Defendant FSI launched a force and/or instrument of harm that resulted in injury to and death of Decedent.

56.     By reason of the foregoing, Defendant FSI is liable to Plaintiff on behalf of Decedent's Estate and the Decedent's survivors and beneficiaries for compensatory damages in a sum that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction and for punitive damages; Plaintiff will seek damages in an amount to be proven and determined at the time of trial.

## FOURTH CAUSE OF ACTION AGAINST DEFENDANT FSI
### (THIRD PARTY BENEFICIARY OF CONTRACT)

57.     Plaintiff repeats and reiterates each and every allegation contained in Paragraph Nos. 1 through 56 of the Complaint with the same force and effect as if fully set forth herein.

58.     As a fare paying passenger aboard Continental Connection Flight 3407, Decedent was a direct and intended third party beneficiary of the training and/or other contract(s) entered into between Defendant FSI and Defendants CONTINENTAL, COLGAN and/or PINNACLE.

59.     The breach by Defendant FSI of its contractual duty/duties proximately caused and/or contributed to the crash of Continental Connection Flight 3407 and resulting fatal injuries to Decedent.

60.     By reason of the foregoing, Defendant FSI is liable to Plaintiff on behalf of Decedent's Estate and the Decedent's survivors and beneficiaries for compensatory damages in

a sum that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction and for punitive damages; Plaintiff will seek damages in an amount to be proven and determined at the time of trial.

## FIFTH CAUSE OF ACTION AGAINST DEFENDANT FSI
### (NEGLIGENCE)

61.     Plaintiff repeats and reiterates each and every allegation contained in Paragraph Nos. 1 through 60 of the Complaint with the same force and effect as if fully set forth herein.

62.     Upon information and belief, Defendant FSI conducts and operates a flight school for the instruction and training of professional pilots.

63.     Upon information and belief, in March 2008, Defendant FSI provided training and instruction to COLGAN employee Shaw, the First Officer on Continental Connection Flight 3407, as to the operation of the Bombardier Model Dash 8-Q400 civil aircraft, at FSI's Toronto Learning Center in Toronto, Ontario, Canada.

64.     Upon information and belief, in November 2008, COLGAN employee Renslow, the Captain on Continental Connection Flight 3407, was trained and instructed in the operation of the Bombardier Model Dash 8-Q400 civil aircraft at FSI's St. Louis Training Center in St. Louis, Missouri, on/in a simulator owned and operated by FSI.

65.     Upon information and belief, Defendant FSI designed the aforesaid training programs and simulators used therein provided to Shaw and Renslow in the course of their employment with COLGAN.

66.     Upon information and belief, the crash of Continental Connection Flight 3407 was proximately caused by the negligence, careless acts and omissions, wrongful acts and omissions, wanton and willful acts and omissions, and recklessness and dereliction of duty of

- 16 -

Defendant FSI in instructing and training Shaw and Renslow and/or its creation and/or design of the aforesaid programs of instruction and training.

67.     As a result of the foregoing, Defendant FSI's negligence, carelessness and recklessness was a proximate cause of the fatal crash of Continental Connection Flight 3407 and the resulting injuries to and death of Decedent.

68.     By reason of the foregoing, Defendant FSI is liable to Plaintiff on behalf of Decedent's Estate and the Decedent's survivors and beneficiaries for compensatory damages in a sum that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction and for punitive damages; Plaintiff will seek damages in an amount to be proven and determined at the time of trial.

## SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (WRONGFUL DEATH)

69.     Plaintiff repeats and realleges each and every allegation contained in Paragraph Nos. 1-68 with the same force and effect as if fully set forth at length herein.

70.     Decedent is survived by and left by Plaintiff and her survivors, each of whom was dependent on Decedent for her support and sustenance and was deprived of the pecuniary value of Decedent's love, affection, companionship, advice, counsel, nurture and moral guidance.

71.     As a result of the aforesaid crash of Continental Connection Flight 3407 and the death of Decedent, medical, funeral and/or burial expenses have been incurred.

72.     By reason of the foregoing negligence, careless acts and omissions, wrongful acts and omissions, wanton and willful acts and omissions, recklessness and dereliction of duty, Defendants COLGAN, PINNACLE, CONTINENTAL and FSI are liable to Plaintiff for compensatory damages in a sum that exceeds the jurisdictional limits of all lower courts which

would otherwise have jurisdiction and for punitive damages; Plaintiff will seek damages in an amount to be proven and determined at the time of trial.

## SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
## (CONSCIOUS PAIN AND SUFFERING AND PRE-IMPACT TERROR)

73.     Plaintiff repeats and realleges each and every allegation contained in Paragraph Nos. 1-72 with the same force and effect as if fully set forth at length herein.

74.     By reason of the foregoing negligence, careless acts and omissions, wrongful acts and omissions, wanton and willful acts and omissions, recklessness and dereliction of duty, Defendants COLGAN, PINNACLE, CONTINENTAL and FSI are liable to Plaintiff's decedent's Estate for compensatory damages in a sum that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction and for punitive damages by reason of Plaintiff's decedent's pre-impact terror, psychic injury and conscious pain and suffering before death, as well as other damages; Plaintiff will seek damages in an amount to be proven and determined at the time of trial.

**WHEREFORE**, Plaintiff TINA SINISCALCO, Individually and as Executrix of the Estate of MARY JULIA ABRAHAM, deceased, demands trial by jury and judgment against the Defendants in an amount exceeding the jurisdictional limitations of all lower Courts and such punitive damages as the trier of fact may award together with the costs and disbursements of this action.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all causes of action.

DATED:      Buffalo, New York
            November 19, 2009

Respectfully submitted,

PHILLIPS LYTLE LLP

By_____
            Kenneth A. Manning
            Timothy W. Hoover
Attorneys for Plaintiff
3400 HSBC Center
Buffalo, NY 14203-2887
Telephone:  (716) 847-8400
Facsimile:  (716) 852-6100
kmanning@phillipslytle.com
thoover@phillipslytle.com

# EXHIBIT B

## AFFIDAVIT OF BRIAN HUNT

STATE OF TENNESSEE    )
                        ) ss.:
COUNTY OF SHELBY    )

       BRIAN HUNT, being duly sworn, deposes and says:

       1.     I am Vice President and General Counsel of PINNACLE AIRLINES CORP. ("PINNACLE') and COLGAN AIR, INC. ("COLGAN"). I joined PINNACLE and COLGAN as Vice President and General Counsel in January of 2009. I am authorized and empowered to execute this Affidavit on behalf of PINNACLE and COLGAN.

       2.     I am making this Affidavit in support of Defendants' Joint Notice of Removal. The facts set forth in this Affidavit are based on my personal knowledge and on business records and other documents which I personally reviewed before executing this Affidavit.

       3.     PINNACLE is incorporated under the laws of the State of Delaware with its principal place of business in Tennessee.

       4.     COLGAN is incorporated under the laws of the Commonwealth of Virginia with its principal place of business in Virginia.

       5.     On February 12, 2009, a COLGAN Bombardier Dash 8-Q400, N200WQ operated as Continental Connection Flight 3407 from Newark, New Jersey, to Buffalo, New York crashed near Clarence Center, New York. Forty-five passengers and four crew members were fatally injured and there was one ground fatality.

       6.     First Officer Rebecca Shaw received her Dash 8-Q400 initial training from FlightSafety Canada Ltd. and its employees at a training facility in Toronto, Canada.

7.    Captain Marvin Renslow received his Dash 8-Q400 training from Colgan employees at FlightSafety International, Inc.'s facility in St. Louis, Missouri.

_____

BRIAN HUNT

Sworn and subscribed to before
me this 7ᵗʰ day of December, 2009

_____

Notary Public
My Commission Expires:
    April 3, 2013

DONNA PEER ZABIELSKI
STATE
OF
TENNESSEE
NOTARY
PUBLIC
SHELBY COUNTY

701557v.1

# EXHIBIT C

STATE OF NEW YORK     )
                             ) ss:
COUNTY OF ERIE         )

## AFFIDAVIT OF PATRICK COULTER

BEFORE ME, the undersigned authority, on this day personally appeared PATRICK COULTER, who, after being duly sworn, did depose upon oath and state the following:

1.      My name is Patrick Coulter. I am over the age of 18 years. I am of sound mind, capable of making this Affidavit, and personally acquainted with the facts herein stated.

2.      I am the Center Manager for FlightSafety Canada Ltd.'s Toronto Learning Center located at 95 Garratt Blvd., Downsview, Ontario, Canada.

3.      FlightSafety Canada Ltd.'s Toronto Learning Center is an FAA Approved Part 142 Training Center.

4.      Colgan Air, Inc. has an FAA Approved Part 121 Training Program for its flight crews.

5.      The available records reflect that in March 2008, First Officer Rebecca Shaw satisfactorily completed Colgan Air, Inc.'s FAA Approved Part 121 Dash-8 Q400 Initial/Transition Course at FlightSafety Canada Ltd.'s Toronto Learning Center.

6.      FlightSafety Canada Ltd. provided no recurrent training to First Officer Rebecca Shaw.

7.      FlightSafety International, Inc. is a separate company from FlightSafety Canada Ltd.

SIGNED this 4th day of *December* , 2009.

_____
Patrick Coulter

SUBSCRIBED AND SWORN TO before me by Patrick Coulter on this 4th day of December, 2009.

_____
Notary Public in and for the State of New York

My Commission Expires:

_____
THOMAS J. DRURY
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 01/10/20__11

# EXHIBIT D

STATE OF NEW YORK      §
                       §
COUNTY OF QUEENS       §

### AFFIDAVIT OF MARIO D'ANGELO

BEFORE ME, the undersigned authority, on this day personally appeared Mario D'Angelo, who, after being duly sworn, did depose upon oath and state the following:

1.     My name is Mario D'Angelo. I am over the age of 18 years. I am of sound mind, capable of making this Affidavit, and personally acquainted with the facts herein stated.

2.     I am the Treasurer and Assistant Secretary for FlightSafety International Inc.

3.     FlightSafety International Inc. has a facility called the St. Louis Learning Center located at 4645 LeBourget Drive, Saint Louis, Missouri 63134.

4.     FlightSafety Canada Ltd. has a facility called the Toronto Learning Center located at 95 Garratt Blvd., Downsview, Ontario, Canada.

5.     FlightSafety International Inc. is a different entity from FlightSafety Canada Ltd.

SIGNED this 3rd day of December, 2009.

_____

SUBSCRIBED AND SWORN TO before me by Mario D'Angelo on this 3rd day of December, 2009.

_____
Notary Public in and for the State of New York

My Commission Expires:

12/31/2010

KATHY CIGNA
Notary Public, State of New York
No. 01CI4516698
Qualified in Queens County
Commission Expires 12/31/2010

**EXHIBIT E**

STATE OF MISSOURI   §
          §
COUNTY OF ST. LOUIS  §

## AFFIDAVIT OF MICHAEL KING

BEFORE ME, the undersigned authority, on this day personally appeared MICHAEL KING, who, after being duly sworn, did depose upon oath and state the following:

1.  My name is Michael King. I am over the age of 18 years. I am of sound mind, capable of making this Affidavit, and personally acquainted with the facts herein stated.

2.  I am the Center Manager for FlightSafety International Inc.'s Learning Center located at 4645 LeBourget Drive, Saint Louis, Missouri 63134.

3.  FlightSafety International Inc.'s St. Louis Learning Center is an FAA Approved Part 142 Training Center.

4.  Colgan Air, Inc. has an FAA Approved Part 121 Training Program for its flight crews.

5.  The available records reflect that in November 2008, Captain Marvin Renslow was trained by Colgan Air, Inc. using FlightSafety International Inc.'s Dash-8 Q400 simulator at FlightSafety International Inc.'s St. Louis Training Center. Colgan Air, Inc. "dry leased" FlightSafety International Inc.'s Dash-8 Q400 simulator in St. Louis, Missouri, for its training of Captain Marvin Renslow. A "dry lease" means that FlightSafety International Inc. does not provide instructors. Also, the training program Colgan Air, Inc. used was Colgan Air's FAA Approved Part 121 training program, not FlightSafety International Inc.'s training program.

6.  FlightSafety International Inc. did not provide recurrent training to Captain Marvin Renslow.

SIGNED this _3^RD_ day of _DECEMBER_, 2009.

         _____
         Michael King

SUBSCRIBED AND SWORN TO before me by Michael King on this _3_ day of _December_, 2009.

         _____
         Notary Public in and for the State of Missouri

My Commission Expires:

_3·28·12_

GINA M. VERHARST
Notary Public - Notary Seal
STATE OF MISSOURI
St. Charles County
My Commission Expires: Mar. 28, 2012
Commission # 08378735

Page 1